INTERSTATE ELECTRIC COMPANY v. ADAMANT PORCELAIN CO.

---

(Jan. 16, 1928.   Opinion and Decree.)
(Feb. 13, 1928.   Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Sales—Par. 229.**

Where both by verbal agreement and by letter defendant had insisted upon prompt inspection of its porcelain knobs and immediate return to factory, if found unsatisfactory as to quality, plaintiff's claims for damages due to defects in quality will be dismissed where goods were never returned and specific complaints as to quality were certainly not made until months later and possibly not at all.

2. **Louisiana Digest—Sales—Par. 221.**

Claims for shortage will be allowed where two of the barrels, which had apparently never been opened, selected at random from the shipment, were counted by experts and each was found deficient in quantity.

**38  La. App.**

Appeal from Civil District Court, Div. "A". Hon. Hugh C. Cage, Judge.

Action by Interstate Electric Company against Adamant Porcelain Company.

There was judgment for defendant and plaintiff appealed.

Judgment amended and affirmed.

Lemle, Moreno & Lemle, of New Orleans, attorneys for plaintiff, appellant.

Lawrence M. Janin, of New Orleans, attorney for defendant, appellee.

JONES, J.  This is a suit for Two thousand, eight hundred sixteen and 26/100 ($2,816.26) Dollars brought by a wholesale distributor of electrical supplies against the Adamant Porcelain Company, a manufacturer of electrical porcelain, for defective goods and shortages in three shipments of electrical porcelain made by the latter company to it. An original and two supplemental and amended petitions were filed by the plaintiff. The original petition was filed hurriedly in order to seize by attachment certain funds belonging to the defendant, which is a foreign corporation, before they could be sent out of the jurisdiction of the Court.

The first supplemental petition contained a complete specification of plaintiff's claim, but did not give the exact nature of the defects in defendant's goods which were complained of. An exception of vagueness and indefiniteness having been filed, plaintiff again amended its petition and described the nature of the defects in detail.

Defendant's answer denied the existence of the shortages and also denied that the goods delivered were of defective character, and set up a small reconventional demand in the sum of One Hundred Seventy-six and 07/100 ($176.07) Dollars, repre-

senting the balance due by the plaintiff on a later invoice. Judgement was rendered in favor of the defendant, dismissing plaintiff's suit, except as to an admitted item of Eleven and 68/100 ($11.68) Dollars, and recognizing defendant's demand in reconvention. From that judgment plaintiff prosecutes this appeal.

The various items of damage relied upon by plaintiff are contained in Paragraph 2 of its first supplemental and amended petition, being sub-sections "C" to "J", both inclusive.

Plaintiff was acting as the agent and distributor of respondent in the distribution of its products in the Southern States. The record shows that a number of orders were placed by plaintiff with respondent during the year 1920 for various kinds of electrical porcelain, which was delivered to plaintiff packed in barrels. A complaint was made by plaintiff and a representative of respondent came to New Orleans to investigate the matter and his visit resulted in a credit being allowed to plaintiff for about One Thousand ($1,000.00) Dollars. This was in the latter part of the year 1920 and, at that time, plaintiff had already placed with respondent three additional orders. The manager of defendant company testifies (and this testimony, which is uncontradicted, is corroborated by later developments) that an essential condition of this adjustment was the filling of the orders then on hand because the president of the plaintiff company thought that defendant might quit them as soon as this adjustment was made. It was further agreed that plaintiff could return porcelain if it was not satisfactory. These orders were filled in the early part of the year 1921, one invoice for Three Thousand Nine Hundred Four and 74/100 ($3,904.74) Dollars being dated January 15th, one for Three Thousand, Seven Hun-

dred Forty-four and 94/100 ($3,744.94) Dollars, dated January 31st, and one for Three Thousand Eighty-two and 47/100 ($3,082.47) Dollars, dated May 26th. The plaintiff has settled with the defendant in full for all three of these shipments.

The reconventional demand, the validity of which was recognized by plaintiff in its first amended and supplemental petition, represented a small invoice received in July. The plaintiff gave to respondent on March 2nd, two notes in payment of the January invoices, maturing in sixty and ninety days, which notes were paid, and the May invoice was apparently paid at once in cash.

The principal items of damage relied upon by plaintiff are for shortages and defective quality of goods involved in the January shipments. These shipments, which consisted almost entirely of porcelain knobs, were received by plaintiff in closed barrels, the invoice of January 15th being contained in ninety-four barrels, and that of January 31st in ninety barrels. These barrels, each of which was supposed to contain five thousand tops and five thousand bottoms, were stored away unpacked to await resale. No examination was made at that time of the contents of the barrels, as plaintiff was engaged almost exclusively in the wholesale business and would resell the goods in lots of two or three, or more, barrels, without ever unpacking them.

Moreover, at the time that the January shipments were received, plaintiff had on hand considerable stock of porcelain and, hence, did not make any sales of the goods contained in these shipments until a considerable time after their receipt.

It is, therefore, in evidence, that the January shipments were not inspected upon their receipt and that they were

stored away for some length of time in closed barrels to await future sales.

Plaintiff's president testifies that he began to complain by letter about the quality of these January shipments of porcelain as soon as he received complaints from his customers in various localities, but the record contains only two of plaintiff's letters about the subject and neither of them refers specifically to these January shipments. On March 23rd, 1921, plaintiff wrote defendant, quoting a letter of the Holt Electric Company of Florida complaining about certain porcelain knobs, and again on June 22nd, 1921, plaintiff wrote enclosing two Nailit Knobs taken at random from last shipment of defendant, (which had been made on May 26th, 1921), one of which was represented as being all right and the other as being defective. Defendant's manager testifies that he at once had the Holt Electric Company return the knobs of which they complained, allowing proper credits therefor, and later sold these knobs to other customers without complaint, as he found by inspection, when they were returned to the factory, that the knobs were O. K. Both he and the president of defendant company testify emphatically and repeatedly that the knobs were manufactured, inspected, weighed and shipped with unusual care on account of recent trouble with plaintiff company; that they never received any complaints from plaintiff about the January shipments and that the complaint as to the shipment of May 26th in the letter of June 22nd, 1921, was trivial and was promptly settled satisfactorily.

Both of the letters above referred to were offered in evidence by defendant, which also offered various other letters, and answered the interrogatories in great detail and apparently with care and precision.

Plaintiff's president explains his inability to offer letters showing complaints by stating that almost all his entire correspondence file on the matter had been lost and that he only had left one or two letters, which had been given his attorney for suit.

Moreover, ninety-five per cent of the claim is based on shortage and defects in the Old Code Split knobs and in the New Code Split knobs and there was no claim for defects in the Nailit knobs.

Mr. Reid, Secretary-Treasurer and General Manager of defendant company, testified in part as follows:

"Again, the 'last porcelain shipped' was that shipped May 26th and reference to all the letters written after that date will show that their complaints referred to the May 26th shipment. A letter from them to us, dated November 4th, 1921, again referred only to 'recent orders'.

"As heretofore testified by me in this deposition, when I made agreement with Mr. Stern, it was agreed that if there was any material shipped to them which was unsatisfactory they could return it and in our letter to the Interstate Electric Company, under date of May 31st, 1921, which letter was placed in an envelope addressed to the Interstate Electric Company, New Orleans, La., a two-cent stamp was placed on the envelope and the same was deposited in the Post Office at East Liverpool, Ohio, and a true copy of said letter is hereto attached and marked Exhibit I.

"We wrote plaintiff as follows: 'We are in receipt of your communication of the 26th relative to porcelain and beg to advise, that porcelain in car going forward to you at present time is of good commercial quality, nevertheless, we would thank you to investigate this porcelain on its arrival, and should it not meet with your expectations, have same returned to the factory, and at the same time advise us, in what way the porcelain does not meet with your requirements, as it is our desire to furnish our patrons with what they want, if at all possible.'

"The recent shipment referred to by Interstate Electric Company in its letter to us May 26th, 1921, was recent shipments by us to customers of plaintiff on plaintiff's order, such as the shipment to Holt Electric Company of Jacksonville, Fla.

"They never returned to us any part of the May 26th shipment, or of any shipment which they claim is defective. Our letter of August 8th, 1921, copy of which is hereto attached marked 'Exhibit J.' and the original of which was placed in an envelope, addressed to Interstate Electric Company, New Orleans, La., and deposited with a two-cent postage stamp on the envelope, in the Post Office at East Liverpool, Ohio, by me, reminds the plaintiff that I told Mr. Stern to inspect and reconsign such goods as would not meet with his approval and that I had requested their Birmingham Branch to return the goods which they claimed were defective.

"I also call attention to the letter of the plaintiff to our Company dated October 10th, 1921, hereto attached, marked 'Exhibit K', in which the plaintiff says that Mr. Reid promised if we had any more trouble with porcelain that we could return it; also there are other letters from the plaintiff to the defendant which say practically the same thing.

"After these shipments of January 15th and January 31st were made, the plaintiff wrote us under date of February 14th, 1921, that business conditions were very bad in the South and that they were unable to pay our bills and requested us to take their notes for the same, but made no complaint as to the quality of the goods shipped in January. (Said letter is hereto attached, marked 'Exhibit L'.)

"Under date of February 17th, we wrote the plaintiff that we would accept the notes. The notes not being sent, we again under date of February 26th, 1921, wrote them a letter reminding them that they had not sent the notes. (A copy of said letter to them is hereto attached, marked 'Exhibit L.')

"Each of these letters were placed in an envelope addressed to Interstate Electric Company, a two-cent stamp was placed on each envelope and each of the letters were deposited by me in the Post Office at East Liverpool, Ohio.

"Invoices for these goods which we sent to the plaintiff specified that all complaints must be made within ten days from receipt of shipment.

"The plaintiff continued to give us orders up until the Fall of 1921, or later; until in December we became disgusted and wrote them that we would cease business relations with him. Said letter was placed in an envelope, addressed to Interstate Electric Company, New Orleans, La., and by me deposited in the Post Office at East Liverpool, Ohio, with a two-cent postage stamp thereon. (A copy of said letter is hereto attached, marked 'Exhibit P'.)"

When questioned as to why his company had not returned the porcelain as soon as the defects were ascertained, plaintiff's president answered that they had then settled for it and that they feared defendant's credit.

Mr. Peach, President of the defendant company, who came here from Ohio to be present at the trial, after testifying to his long experience in all the various grades of porcelain manufacture, and as to the unusual care with which these January shipments had been manufactured, weighed, inspected and shipped, swore that his company had never had any complaints as to the January shipments and as to the financial condition of his company, he said, "We were organized in 1915 and Dun and Bradstreet rate us from Seventy-five Thousand Dollars to One Hundred Thousand Dollars and we are dealing with the largest companies in the country. On the last appraisal the Cleveland Appraisal Company appraised our mills and machinery and other things which make up our assets over Two Hundred Fifty Thousand Dollars and if Mr. Stern wanted his refund he could have gotten it if he was entitled to it."

When asked about a complaint to the Federal Trade Commission, made by plaintiff company, on the ground of short shipments, he answered: "In February, 1922, a gentleman came who was connected with

the government at Washington, but it was not for any shortage, but it was that we were discriminating against the Electric Company by not selling them porcelain, and we opened our files and called his attention to the letter of December 8th wherein we refused to ship them on account of our unpleasant relations and after looking it over he said we were justified in not selling them any more.

Plaintiff to prove poor quality, introduced Mr. Paul Hogan of the Electrical Supply Company, who testified that his company had had trouble with some of the knobs bought from the January shipment and had to take some of them back from one of his customers, but he also testified that they had later bought a car load of similar knobs from defendant which had proved entirely satisfactory.

The testimony of Mr. Wellman of the Fire Prevention Bureau, another of plaintiff's witnesses as to defective quality, is so involved and contradictory that it has little probative value and the testimony of plaintiff's officers and employees on the same point is certainly equalled, if not outweighed, by the testimony of similar persons identified with defendant.

Plaintiff withdrew at the trial one item amounting to Five Hundred Twenty-three and 00/100 ($523.00) Dollars of its claim and produced as a witness to bad quality only one local contractor, although one of their employees testified that several other local contractors had been dissatisfied with the knobs.

We have, therefore, reached the conclusion that plaintiff has failed to make his case certain as to defects in quality. Moreover, we agree with the trial judge in thinking that it is now estopped by the failure to exercise its right to return the shipments promptly, so that defendant might have sold them to other customers as it did the Holt Electric Company shipment, for Mr. Reid, the Manager, had written on May 31st in confirmation of his verbal agreement to the same effect, especially requesting prompt inspection and return to the factory of all unsatisfactory articles.

During the trial the judge appointed an expert to count three of the barrels of knobs, which were still on hand along with many others, in the warehouse of the plaintiff company. This expert, in the presence of the presidents of both companies, counted two barrels, finding in one a shortage of 11.1% and in the other a shortage of 6.24%, making an average shortage in the two barrels of 8.65%.

Defendant's only attempted explanation of this shortage is a possible pilfering, but as all parties agree that the barrels had apparently never been opened, we are obliged to conclude that there must have been an average shortage in each of the January shipments of 8.65%. No estoppel could apply to this shortage, because if the knobs weren't placed in the barrels originally, they could not have been sold to anybody else even if they had been promptly returned to the factory. The total of the January shipments is Seven Thousand, Six Hundred Fifty-nine and 68/100 ($7,659.68) Dollars and 8.65% of this amount is Six Hundred Sixty-two and 56/100 ($662.56) Dollars, from which must be deducted the sum of One Hundred Sixty-five and 39/100 ($165.39) Dollars, an amount admittedly due defendant by plaintiff. See Box Co. vs. Independence Veneer Co., 163 La. 86, 111 South. 608.

It is, therefore, ordered, adjudged and decreed that there be judgment in favor of plaintiff, Interstate Electric Company, and against defendant, Adamant Porcelain Company, in the full sum of Four Hun-

dred Ninety-seven and 17/100 ($497.17) Dollars, with legal interest thereon from judicial demand, and with recognition of plaintiff's writ of attachment up to that amount.